IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAKEVIEW TECHNOLOGY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 7209 |
| | ) | |
| VISION SOLUTIONS, INC., STEPHEN | ) | Judge Aspen |
| MASSEY, and ALLAN CAMPBELL, | ) | |
| | ) | Magistrate Judge Ashman |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT STEPHEN MASSEY'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Stephen Massey is a former senior executive of Plaintiff Lakeview

Technology, Inc. ("Lakeview"), a corporation based in Oakbrook Terrace, Illinois. Through a

conclusory Declaration, Stephen Massey ("Massey") baldly asserts that his contacts with Illinois

are peripheral, and that the actions at the heart of this lawsuit have no connection to Illinois.

Massey's Declaration, however, fails to account for allegations of Lakeview's Complaint that

establish that Massey is subject to jurisdiction in Illinois. As described in Lakeview's

Complaint, Massey committed a number of tortious acts in Illinois, and is involved in an

actionable conspiracy where a co-conspirator took substantial actions in Illinois. Accordingly,

Massey's Motion to Dismiss must be denied.

However, by separate Motion, Lakeview requests leave to stay the briefing on

Massey's Motion to Dismiss to allow Lakeview to propound jurisdictional discovery, including

document requests, interrogatories and a deposition regarding jurisdictional issues. Massey's

Motion and Declaration raise factual issues regarding (a) Massey's contacts with Illinois; (b) the

geographic scope of Massey's work for Vision Solutions, Inc. ("Vision"); (c) the location and

timing of the events leading to Lakeview's claims against Massey; and (d) Massey's role at

Vision. Much of the information regarding the factual assertions of Massey's Declaration is exclusively in the control of Massey. Accordingly, Lakeview requests leave to file an Amended Response brief after jurisdictional discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

This is an action by Lakeview against Massey, Vision and Alan Campbell ("Campbell") for (1) tortious interference with contract against Vision and Massey, (2) breach of contract against Campbell, (3) tortious interference with contract against Vision and Massey as to Campbell, (4) misappropriation of trade secrets, (5) conversion, (6) aiding and abetting and/or inducing a breach of fiduciary duty, (7) violation of Computer Fraud and Abuse Act, and (8) civil conspiracy. (Compl.) Lakeview's claims arise from Vision's campaign to misappropriate Lakeview's trade secrets and confidential information through the repeated hiring of Lakeview's sales executives. (*Id.* ¶ 2.) Upon joining Vision, these sales executives assume the same position (and the same territories) that they formerly managed at Lakeview. (*Id.*) By hiring Lakeview employees, Vision has taken Lakeview's confidential information and trade secrets, and attempted to use that information to gain a competitive advantage. (*Id.*) Through the wrongful acts of Massey, Vision recently induced Eric Robinson ("Robinson")[1] and Campbell to breach their contracts with Lakeview, and to misappropriate Lakeview's confidential information and trade secrets. (*Id.*)

---

[1] Lakeview originally sought to bring the actions in this Complaint as additional claims in a related case pending before Judge Kocoras, *Lakeview Technology, Inc. v. Robinson*, Case No. 05 C 3227. In that action, Lakeview seeks damages and injunctive relief for breach of contract and misappropriation of trade secrets against Robinson. The *Robinson* court denied Lakeview's Motion to Amend its Complaint in that action, and has also denied Lakeview's motion to consolidate this action with the *Robinson* action.

**A.      Massey Is A Former Employee Of Lakeview, A Company Headquartered In Illinois.**

Massey is a former high-ranking executive for Lakeview Technology, Inc., an Illinois corporation with its headquarters in Oakbrook Terrace, Illinois.  (Compl. ¶ 56; Declaration of Stephen Massey ("Massey Decl.") at ¶ 10.)  Lakeview operates in the high availability software industry, providing backup data and software services for businesses around the world.  (*Id.* ¶¶ 2, 6.)  Only six companies operate within the same industry worldwide.  (*Id.* ¶ 51.)  Massey held the position of World Wide Vice President of Sales at Lakeview, and also acted as Lakeview's Vice President of Business Development.  (*Id.* ¶ 56.)

After Massey left his employment with Lakeview, he joined Vision, one of Lakeview's principal competitors, as Vice President for Worldwide Sales.  (*Id.*)  Lakeview filed suit against Massey in state court in Illinois.  (Massey Decl. ¶ 11.)  Massey responded to that suit by appearing in state court and a Motion to Dismiss.  (*Id.*)

**B.      Massey Committed Tortious Acts Through His Solicitation Of Eric Robinson.**

Lakeview's claims against Massey arise in part from Massey's solicitation of Robinson, a former senior sales executive at Lakeview, now employed as Vision's Vice-President for Sales for the Americas, and from Massey's conduct after Vision's hiring of Robinson.[2]  Massey met Robinson through their joint employment with Lakeview.

From late fall of 2004 through April 2005, Massey actively solicited Robinson to join Vision.  (Deposition of Stephen Massey in *Lakeview v. Robinson*, ("Massey Dep.") at 94-112, 118-19.)  During the negotiations, Robinson explained to Massey that he, Robinson, was

---

[2] In the *Robinson* action, Lakeview deposed Massey and Robinson regarding the events leading to Robinson's hiring by Vision.  Through an Order of the Seventh Circuit, certain portions of the Massey and Robinson depositions and deposition exhibits are in the public record, and are attached to this Response Brief.  (See Ex. B, January 11, 2006 Order of the Seventh Circuit Court of Appeal.)

concerned about violating his contractual obligations to Lakeview – in particular, the terms of his

non-compete and other restrictive covenants contained in his Employment Agreement. (Massey

Dep. at 146-48.)

In that Agreement, Robinson agreed, among other things:

[e]xcept with the prior written consent of Lakeview, during [his] employment with Lakeview and for a period of one year after that employment ends, [he] will not participate in or be engaged directly or indirectly anywhere in the world where [he] actively participated to generate business for Lakeview (which [he] acknowledge[s] constitutes the geographic scope of Lakeview's market area) in any Competitive Business, whether as owner, partner[], director, shareholder, investor, consultant, agent, employee, co-venturer, or otherwise.

(Ex. A at ¶ 19.) He also agreed that:

for a period of one (1) year immediately following the termination or separation from employment with Lakeview for any reason, [he] shall not, directly or indirectly and in any way … solicit or accept on behalf of another or attempt to entice away from Lakeview (i) any customer of Lakeview with whom [he] had contact as an employee of Lakeview in the course of [his] duties, in order to sell such customer the same, similar, or related services and/or products which such customer purchased from Lakeview during [his] employment with Lakeview, or (ii) any prospective customer of Lakeview . . . includ[ing] only those prospective customers to whom Lakeview or its strategic partners have made a written proposal during the twenty-four (24) consecutive calendar months preceding [his] separation from Lakeview regardless of surrounding circumstances, or had made at least two (2) sales visits.

(Ex. A at ¶ 10.)

Also, in addition to agreeing to preserve and maintain the secrecy of Lakeview's

confidential information, Robinson agreed that Lakeview would suffer irreparably, have no

adequate remedy at law, and be entitled to injunctive relief for any breach or threatened breach

of his employment agreement. (Ex. A at ¶¶ 4, 13.)

During his pursuit of Robinson, Massey asked Robinson to send him a copy of

Robinson's Lakeview Employment Agreement. (Massey Dep. at 94-109.) Robinson complied.

Robinson discussed the terms of his Lakeview employment contract with Massey – specifically the non-compete and non-solicitation provisions. (Massey Dep. at 146-48.) Additionally, Massey and Robinson both consulted attorneys to review Robinson's Lakeview contract, and to opine regarding whether the non-compete provisions would be enforceable. (Massey Dep. at 94-109.) That Agreement is expressly governed by Illinois law, and requires the parties to bring any action relating to the Agreement in Illinois state court or the Northern District of Illinois. (Ex. A. at ¶¶ 15, 16.)

Robinson initially turned down Massey and Vision's offer of employment. Massey testified that he had a lengthy conversation with Robinson about his decision not to join Vision in December 2004, and that *the primary reason that Robinson declined Vision's December 2004 offer related to his employment contract with Lakeview*. Massey summarized the conversation in an e-mail to Vision's most senior executives, including Vision's Chief Executive Officer and Chief Operating Officer:

> Well, I'm afraid our fears have been substantiated. Eric has decided not to join Vision at this time. I spend two hours on the phone with him last night and he is extremely disappointed that he could not take advantage of this opportunity but he feels the timing for him personally is not right. He has some financial requirements that could not survive a six- to nine-month layoff from work. Granted that is a worse case scenario, but he doesn't feel he is in a position to take the risk at this time.

> He left the door open though, he is unhappy where he is and he doesn't see himself staying there long term. He just truly fears his non-compete agreement with Lakeview. Who knows, I may talk him into it by the end of the holidays.

(Massey Dep. Ex. 6.)

Despite Robinson's concerns, Massey continued to pursue him. On April 14, 2005, Massey convinced Robinson to accept Vision's employment offer. (Deposition of Eric Robinson in *Lakeview v. Robinson*, ("Robinson Dep.") at 79-80.)

C.    **Massey Acted To Conceal Robinson's Lies To Lakeview Regarding His Intention To Join Vision.**

After accepting Vision's offer of employment, Robinson did not immediately leave Vision. (Robinson Dep. at 81-89.) Rather than immediately leaving Lakeview, Robinson gave several weeks "notice" and continued to work as Lakeview's Vice President for Sales for the Western region of North America and Latin America. (*Id.*)

Lakeview allowed Robinson to continue working because Robinson *lied* about his intention to join Vision. Robinson told his Lakeview colleagues that he was leaving the industry to pursue personal real estate interests. (Robinson Dep. at 95-96, 113-25.) After rumors circulated, multiple Lakeview employees directly asked him whether he intended to join Vision. (*Id.*) Robinson flatly denied that he was joining Vision. (*Id.*) Robinson lied to his direct supervisor, his direct reports, Lakeview's director of human resources, and Lakeview's general counsel. (*Id.*)

Discovery in a related action, *Lakeview v. Eric Robinson*, has revealed that Massey and Vision acted to ensure that Robinson's lies would not be revealed while he was working at Lakeview. During his employment with Lakeview, Robinson called Massey, told Massey that he, Robinson, was lying to Lakeview, and asked Massey about rumors that had been circulating that he was joining Vision. (Robinson Dep. at 115-21.) Robinson called Massey because he wanted Massey to find out whether the rumors regarding Robinson's hiring had leaked from Vision. (*Id.*) Massey failed to raise any objection to Robinson's lies to Lakeview. On the contrary, he "agreed" with Robinson's decision to lie to Vision. (Massey Dep. at 78-86.) Additionally, to cover Robinson's lies, Massey sent an e-mail to Vision's human resources department with instructions not to send an announcement of Robinson's hiring, and instructed

6

Vision executives not to publicize the hiring, even within Vision. A copy of the e-mail is attached as Exhibit B.

Because Robinson denied any connection to Vision – and because Massey ensured that Vision did not publicize Robinson's hiring – Robinson continued to enjoy access to Lakeview's highly sensitive confidential information even after accepting Vision's offer of employment. After agreeing to join Vision, Robinson reviewed Lakeview's 2005 sales plans for the Western Region and Latin America, participated in Lakeview's annual regional and national sales meetings in Illinois and reviewed materials prepared for Lakeview's annual partner meeting. (Robinson Dep. at 85-86, 127-28, 193-95.) Lakeview's sales organization operates on a fiscal year ending March 31, and plans for the upcoming year are rolled out in the first weeks of May. (Robinson Dep. at 76, 193-95.) Robinson's delay in accepting Vision's offer allowed him access to Lakeview's plans for the current 2005/2006 sales fiscal year. (Robinson Dep. at 193-95.)

## ARGUMENT

In ruling on a motion to dismiss asserting a lack of personal jurisdiction, a "court accepts all well-pleaded allegations in the complaint as true." *Hyatt Intern. Corp. v. Coco,* 302 F.3d 707, 712-13 (7th Cir. 2002). If a defendant moves to dismiss pursuant to Rule 12(b)(2), "the court must decide whether any material facts are in dispute" in regard to personal jurisdiction and "[i]f so, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged." *Id.* If the court finds that there are material facts in dispute, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction," if and until the court holds the necessary hearing. *Id.*

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER MASSEY.

A federal court sitting in diversity has personal jurisdiction over nonresident defendants if jurisdiction would be proper in the state in which the federal court sits. *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 724 (7th Cir. 1994). Non-residents are subject to jurisdiction in Illinois if: (A) they fall under one of the provisions of the Illinois long-arm statute; and (B) due process would not be violated under either the United States Constitution or the Illinois Constitution. *Hollinger Intern., Inc. v. Hollinger Inc*., 2005 WL 589000, at *10 (N.D. Ill. 2005). Under the Illinois long-arm provision, a court may exercise jurisdiction over nonresident defendants, "as to any cause of action arising from" the commission of a tortious act with the state. 715 ILCS 5/2-209(a)(2). The Illinois long-arm statute allows "jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c).

### A.    Massey Committed Tortious Acts In Illinois.

Massey committed numerous intentional torts that have injured Lakeview in Illinois. Under the "effects doctrine," a defendant is subject to personal jurisdiction "when a defendant aims intentional, tortious actions at the forum state which harm a plaintiff in the forum state and the defendant knows that the plaintiff would be likely to suffer harm there." *International Molding Machine Co. v. St. Louis Conveyor Co*., 2002 WL 1838130, at *4 (N.D. Ill. 2002), *citing Calder v. Jones,* 465 U.S. 783, 789-90 (1984). "Where the injury is economic, a plaintiff must additionally establish that the defendant intended to affect an Illinois interest." *Id.* In *International Molding Machine*, the Court found that the defendant's misappropriation of trade secrets – which occurred in Missouri, but caused injury to the Illinois plaintiff – provided a basis for personal jurisdiction. *Id.*

Under the effects doctrine, courts have exercised personal jurisdiction over a defendant who commits a tort against an Illinois business when the injury is felt in Illinois. *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.,* 34 F.3d 410, 411 (7th Cir. 1994) ("personal jurisdiction is proper in the state of the plaintiff's principal place of business because the injury primarily occurred where the plaintiff lives"); *see also Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.,* 88 F. Supp. 2d 914, 920 (N.D. Ill. 2000). Therefore, specific jurisdiction can be proper when the injury occurs in Illinois, even if all of the other relevant conduct took place elsewhere. *See Celozzi v. Boot,* 2000 WL 1141568, at *3 (N.D. Ill. Aug. 11, 2000).

In inducing Robinson to breach his obligations to Lakeview and to misappropriate Lakeview's confidential information and trade secrets, Massey clearly intended to affect the Illinois interests of Lakeview. In particular, Massey's actions allowed Robinson to breach his contract with Lakeview – a contract expressly governed by Illinois law. (Ex. A. ¶¶ 15, 16.) Additionally, Massey's efforts to conceal Robinson's hiring by Vision allowed Robinson to misappropriate Lakeview's confidential information from databases maintained in Illinois. (Compl. ¶¶ 22, 49.) Massey's concealment of Robinson's deceptions also allowed Robinson to attend meetings in early May 2005 in Illinois regarding Lakeview's confidential business plans. As alleged in the Complaint, Lakeview and Vision are fierce competitors in a specialized segment of the computer software and hardware industry, and Massey's actions were calculated to advance Vision's (and Massey's) interests to the detriment of Lakeview. (Compl. ¶ 54.)

**B.    This Court Has Jurisdiction Over Massey Because Of Massey's Involvement In Defendants' Conspiracy.**

Additionally, Massey is subject to jurisdiction in Illinois through his participation in a conspiracy with Robinson and Defendants Vision and Campbell. Under Illinois law, a plaintiff may assert a "conspiracy theory of personal jurisdiction" against a non-resident

defendant, who, although he did not himself commit a tort in Illinois, conspired with others to do so. *Hollinger Intern., Inc. v. Hollinger Inc.*, 2005 WL 589000, at *14 (N.D. Ill. 2005); *see also Flag Co. v. Maynard*, 376 F. Supp.2d 849, 855 (N.D. Ill. 2005). "Under this theory, the plaintiff must sufficiently allege that: (1) the non-resident defendant was part of an actionable conspiracy; and (2) a co-conspirator performed a substantial act in furtherance of the conspiracy in Illinois." *Hollinger Intern., Inc.*, 2005 WL 589000, at *14.

Count VIII of Lakeview's Complaint alleges that Massey was part of an actionable conspiracy. As described in Section I(B) above, Massey committed torts in Illinois in furtherance of the conspiracy. Additionally, Robinson, a co-conspirator, performed "substantial acts" in furtherance of the conspiracy in Illinois. Through his lies regarding his employment with Vision, Robinson: (a) obtained access to Lakeview's sales plans for the 2005/2006 sales year; (b) was allowed to participate in Lakeview's meetings with business partners and customers in Illinois; and (c) was allowed to repeatedly access Lakeview's confidential databases – again located in Illinois. Robinson's misappropriation of Lakeview's confidential sales data occurred in Illinois – and the injury from Robinson's misappropriation is also felt by Lakeview in Illinois. Accordingly, this Court may exercise jurisdiction over Robinson under the "conspiracy theory" of jurisdiction.

**C.      Exercise Of Personal Jurisdiction Over Massey Is Fair And Reasonable.**

When a defendant is subject to "specific jurisdiction" in a form, a court must determine whether the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state so that it "should reasonably anticipate being haled into court there." *Hollinger Intern., Inc.*, 2005 WL 589000, at *17 (N.D. Ill. 2005) (quotations omitted). To assert personal jurisdiction consistent with federal due process, the defendants must have: (A)

certain minimum contacts with the forum state such that (B) the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.*

In committing the torts described in Lakeview's Complaint, and participating in the conspiracy among the Defendants and Robinson, Massey intended to cause injury to Lakeview, an Illinois entity. Accordingly, exercise of personal jurisdiction over Massey is eminently fair and reasonable. Massey has worked for Lakeview, an Illinois citizen, and frequently conducted business in Illinois in his work for Vision. (Massey Decl. ¶¶ 10, 15.) Massey's Declaration acknowledges that he recently supervised Vision's sales representative for Illinois – who lives and works in this state. (*Id.* at ¶ 15.) And Massey, in working to conceal Robinson's connection with Vision, knowingly aided Robinson in his misappropriation of Lakeview's confidential information in Illinois. Accordingly, Massey has substantial contacts with Illinois, and those contacts are relevant to Lakeview's claims in this action. This Court may properly exercise jurisdiction over Massey.

### D.    The "Fiduciary Shield Doctrine" Does Not Bar Personal Jurisdiction Over Massey.

At the time of the events underlying this action, Massey was a senior officer of Vision, with responsibility for all of Vision's sales efforts around the world. (Compl. ¶ 56.) His job directly involved competition for sales with Lakeview. (Compl. ¶ 8; Vision Answer ¶ 8.) In his Declaration and Motion to Dismiss, Massey attempts to invoke the "fiduciary shield" doctrine. That doctrine that allows a court, in specific circumstances not present here, to exercise discretion to reject jurisdiction over individual defendants whose only conduct in a forum consisted of following the orders of their employers.

The fiduciary shield doctrine, however, does not apply to high-ranking company officers who have a direct financial stake in a company's health. *Kohler Co. v. Kohler Intern.,*

*Ltd.*, 196 F. Supp. 2d 690, 699 (N.D. Ill. 2002). Massey does not contest Lakeview's allegation that he served as Vision's Executive Vice President in charge of Vision's sales worldwide. Rather, Massey makes conclusory assertions that he is not a "corporate officer or director" of Vision, but ignores his very senior position at Vision. (Massey Decl. ¶ 17.) Massey fails to state whether his compensation is tied in any way to Vision's financial performance.

Moreover, in this action, this Court should exercise its discretion and refuse to apply the fiduciary shield doctrine in light of Massey's intentional torts against Lakeview. Massey is not a mere pawn of his employers at Vision – the documents and testimony attached to this Response show that Massey had autonomy and decision-making authority in his role at Vision. For example, Massey's emails shows that Massey acted to coordinate Vision's efforts to hide Robinson's employment with Vision. (Massey Dep. Ex. 6.) Accordingly, Massey should not be allowed to cloak his intentional torts through the fiduciary shield doctrine.

## <u>CONCLUSION</u>

For all the foregoing reasons, and based on the matters set forth in Lakeview's Complaint and to be established through jurisdictional discovery, Lakeview requests that this Court deny Massey's Motion To Dismiss For Lack Of Personal Jurisdiction.

Dated: March 14, 2006                          Respectfully submitted,


                                               s/ William B. Berndt (ARDC #6269408)
                                               One of the attorneys for Lakeview
Arthur J. Howe                                 Technology, Inc.
Todd H. Flaming
William Berndt
Schopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, Illinois 60606
(312) 701-9300
(312) 701-9335 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I, William B. Berndt, an attorney, certify that I caused a copy of the foregoing

**Plaintiff's Response to Defendant Stephen Massey's Motion to Dismiss for Lack of**

**Personal Jurisdiction** to be served by CM/ECF Noticing this 14th day of March, 2006, on the

individuals listed below:

Daniel F. Lanciloti
Molly K. Eastman
Seyfarth Shaw LLP
55 East Monroe Street
42nd Floor
Chicago, Illinois  60603

s/ William B. Berndt (ARDC #6269408)
William B. Berndt

155592_1.DOC